UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Drug Reform Coordination Network, Inc.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 1:14-cv-00701 (APM) |
| **Grey House Publishing, Inc.,** | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

Plaintiff Drug Reform Coordination Network, Inc., brought this action against Defendant Grey House Publishing, Inc., alleging that Grey House sent it an unsolicited facsimile advertisement in violation of the Telephone Consumer Protection Act of 1991.[1] Grey House has moved to dismiss Plaintiff's Second Amended Complaint on the ground that the facsimile at issue does not meet the Act's definition of "unsolicited advertisement." The court disagrees and denies Defendant's Motion.

II.  **BACKGROUND**

Defendant Grey House Publishing, Inc. ("Grey House"), is a New York-based corporation that publishes *Hudson's Washington News Media Contact Directory*, a reference source for media contacts in the District of Columbia area (the "Directory"). *See* Pl.'s Second Am. Compl., ECF No. 12 ¶ 6-7 [hereinafter Compl.]. Plaintiff Drug Reform Coordination Network, Inc. ("DRCN"),

---

[1] Plaintiff filed suit on behalf of itself and "on behalf of a class of persons similarly situated." Pl.'s Second Am. Compl., ECF No. 12 at 1. The court stayed all proceedings in this matter, including those related to Plaintiff's Amended Motion for Class Certification, ECF No. 13, pending the resolution of Defendant's Motion to Dismiss.

is a non-profit organization registered to do business in the District of Columbia that publishes a weekly electronic newsletter entitled "Drug War Chronicle." *Id.* ¶ 5. On or about February 12, 2014, Grey House sent DRCN a one-page facsimile (the "Fax"). *See id.* ¶ 9; *see also* Compl., Ex. A, ECF No. 12-1. The Fax read as follows:

> The 2014 edition of *Hudson's Washington News Media Contact Directory* is a publication that provides the most accurate and up-to-date information for media contacts in and around our nation's capital. Below is the chance for your **FREE LISTING** to appear in the next edition. This is an opportunity to include as much information as possible. Please take a moment to fill out the form with your organization's information, as well as information on key contacts and executives. Accurate representation of your company is important to us. . . . You will not be charged for this listing, nor are you under any obligation to purchase the work.

ECF No. 12-1. Immediately below the quoted text, the Fax identified DRCN's directory listing information, including its "Contact Name," address, phone number, fax number, and website URL. *Id.* The bottom of the Fax included the notice: "You are entitled to opt out of future faxes. To opt out, please call 1-800-562-2139 x 123 or check the box below and fax the form back to us. You may also e-mail KBierfeldt@greyhouse.com." *Id.*

Seven days after transmitting the Fax, on February 19, 2014, Grey House sent a colorful, multi-page email to DRCN's Executive Director, David Borden, featuring a picture of the Directory and offering it for sale. *See* ECF No. 12-2. The email touted the Directory as a "must-have resource"—"the perfect research tool for Public Relations, Marketing, Networking, and so much more"—and offered it at a discounted price. *Id.* The email also provided purchasing instructions for the Directory, including a link to a "Discount Order Form." *Id.* Grey House sent additional emails to Borden on April 15, 2014, and June 11, 2014. These emails, like the earlier one, heralded the Directory as "the most accurate, most up-to-date source for media contacts in our nation's capital," ECF No. 12-3—"a gold mine of information [that] would be a welcome addition to any reference collection," ECF No. 12-4—and similarly offered it for sale.

On July 3, 2014, DRCN filed a complaint against Grey House claiming that the Fax was an "unsolicited advertisement" in violation of the Telephone Consumer Protection Act of 1991 (TCPA). Compl. ¶ 1. DRCN alleged that the Fax "advertised the Defendant's products and/or services, and offered [it] a free listing in one of Defendant's directories." *Id.* ¶ 9. It further alleged that the three emails it received from Grey House "followed up" the Fax and were "part of an overall marketing campaign by the Defendant, both directly advertising one of the Defendant's directory publications, and also serving as a prelude to subsequent offers for the sale of that publication." Comp. ¶ 12. "Upon information and belief," DRCN averred, "part of Defendant's business practice is to market its directories by transmitting a facsimile advertisement, such as [the Fax], that advertises a free listing in one of Defendant's directories, to potential and existing customers, and to then follow up that facsimile advertisement with subsequent email, fax, telephone communications, and other methods that solicit the purchase of Defendant's directories from those who may have been offered a free listing." *Id.* ¶ 13.

### III.   LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept Plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. U.S.*, 617 F.2d 605, 608 (D.C. Cir. 1979). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## IV. ANALYSIS

### A. Unsolicited Advertisement

Grey House argues that the Fax is not an "unsolicited advertisement" under the TCPA. It contends that "there are no statements included *in the content* of the facsimile that promote the Directory" and thus the Fax is not an advertisement. Mem. of Law in Supp. of Def.'s Mot. to Dismiss, ECF 15-1 at 2 [hereinafter Def.'s Mem. in Supp.] (emphasis added). Grey House further asserts that it sent the Fax "for the sole and expressly stated purpose of requesting updated information from an existing listee in its Directory," *id.* at 14, and not as part of "an overall marketing campaign to promote the commercial availability" of the product, *id.* at 15.

In 1991, Congress enacted the TCPA in part to address the growing problem of unwanted facsimile advertising. *See* Telephone Consumer Protection Act, Pub. L. No. 102-243 (2001)

("Unrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."). Under the TCPA, Congress prohibited any person from using "any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(c). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission, in writing or otherwise." *Id.* § 277(a)(5).

Congress expressly delegated authority to the Federal Communications Commission ("FCC") to develop regulations implementing the TCPA. 47 U.S.C. § 227(b)(2) ("The [FCC] shall prescribe regulations to implement the requirements of this subsection."). The regulations provide guidance on what constitutes an "unsolicited advertisement" under the TCPA and illustrate the types of facsimile communications that violate the statute. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3810-15 (2006) [hereinafter *Rules & Regulations*].[2] As applicable here, the regulations provide that even a facsimile that promotes a free good or service might be an unsolicited advertisement. "[F]acsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *Id.* at 3814. Such communications may be unlawful, the regulations explain, because they often serve as a "pretext to advertise commercial products and services" and "are often part of an overall marketing campaign." *Id.*; *see also Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, No. 3:14-cv-405, 2015 WL

---

[2] Although the 2006 regulations are most relevant to this case, the FCC has issued several sets of regulations since the enactment of the TCPA. *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752 (1992); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014 (2003).

144728, at *4-5 (D. Conn. Jan. 12, 2015) (applying the regulations addressing pretexts to advertisements to a fax inviting physicians to a free dinner meeting). For example, facsimiles regarding "'free' seminars [that] serve as a pretext to advertise commercial products and services" and "'free' publications[, which] are often part of an overall marketing campaign to sell property, goods, or services," may violate the TCPA. *Rules & Regulations* at 3814; *see also North Suburban Chiropractic Clinic, Ltd. v. Merck & Co., Inc.*, No. 03 C 3113, 2013 WL 5170754, at *4 (N.D. Ill. Sept. 13, 2013) (denying motion to dismiss where the defendant sent a fax promoting a free seminar, which did "not mention explicitly any of Defendant's commercially available products or services or express an intent by Defendant to market its products or services," but was alleged to be "part of its work or operations to market its goods and services"). The regulations thus provide that a fax that does not on its face promote a product or service may nonetheless violate the TCPA if it is a precursor to a future solicitation. *Id.*[3]

Taking the complaint's allegations as true and drawing all inferences in DRCN's favor, the court concludes that Plaintiff has sufficiently alleged that the Fax is an "unsolicited advertisement" because it is a "pretext to advertise commercial products and services" and is "part of an overall marketing campaign" to sell the Directory. *Rules & Regulations* at 3814. Standing alone, the Fax does not promote the Directory for sale. Rather, it apprised Plaintiff of the Directory's upcoming

---

[3] Grey House does not contend that the FCC's regulations arbitrarily and capriciously interpret the TCPA. In fact, it relies on them extensively in its pleadings. *See, e.g.*, Def.'s Mem. in Supp. at 9 ("The Rules and Regulations constitute a body of experience and informed judgment which provides guidance for the judiciary."); *id.* at 15 ("As explained in the Rules and Regulations . . . ."). Even though Grey House has not challenged the validity of the FCC's regulations, the court here expresses its agreement with courts in other jurisdictions that have afforded the regulations, at the least, persuasive weight, because Congress expressly delegated rulemaking authority to the FCC and because of the FCC's experience with the general subject matter. *See, e.g.*, *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, Civ. Action No. 12-2132, 2013 WL 486207, at *3 (D.N.J. Feb. 6, 2013) (citation omitted) ("[T]he FCC's examples of what constitutes an advertisement do provide some guidance on how courts should apply the statutory definition of 'advertisement.' In that connection, the examples are helpful and persuasive given that these interpretations and examples are based on the FCC's experience and informed judgment."); *see also N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203, 2010 WL 4939970, at *5 (N.D. Cal. Nov. 30, 2010). ("[T]he court considers and gives weight to the FCC's examples because they are persuasive and helpful.").

edition and offered the opportunity to update Plaintiff's "free listing" so that its contact information would be accurate. ECF No. 12-1. Thus, on its face the Fax is not an "unsolicited advertisement."

But a different conclusion obtains when the Fax is read together with the three direct solicitation emails that followed. Only seven days after it sent the Fax, on February 19, 2014, Grey House sent an email to DRCN's Executive Director promoting the Directory and offering it for sale for $289. *See* ECF No. 12-2 ("Order today and save 10%. Prepay your order and get FREE SHIPPING TOO! Call (800) 562-2139 or Download your DISCOUNT ORDER FORM NOW"). The April 15, 2015, email similarly publicized the commercial availability of the Directory. It included language akin to that contained in the February 19, 2014, email—"[d]on't miss the opportunity to have this important resource in your collection, and start saving time and money today"—and attached a blank "Order Form." *See* ECF No. 12-3. And the June 11, 2014, email likewise promoted the Directory and informed the reader of its availability for purchase. *See* ECF No. 12-4 ("'[T]he directory is the single most compressive source available for Washington D.C. area press contract information.' . . . Prepay and [g]et FREE SHIPPING TOO! Download your Discount Order Form."). The timing and content of these emails give rise to the plausible inference that, as alleged, "Defendant's business practice is to market its directories by transmitting a facsimile advertisement, such as [the Fax] . . . and to then follow up that facsimile advertisement with subsequent email, fax, telephone communications, and other methods that solicit the purchase of Defendant's directories from those who may have been offered a free listing." Compl. ¶ 13. Plaintiff therefore has sufficiently alleged that the Fax is an "unsolicited advertisement" under the TCPA.

Two recent FCC adjudications lend support to the court's conclusion.[4] In 2010 and 2011, the FCC found that Presidential Who's Who, Inc. ("Presidential Who's Who")—a producer of a directory similar to that produced by Defendant—violated the TCPA by sending "unsolicited advertisements" via facsimile. *See In the Matter of Presidential Who's Who dba Presidential Who's Who, Inc.*, 25 F.C.C.R. 13759 (2010), ECF No. 18-3 at 10-17 [hereinafter 2010 Notice]; *In the Matter of Presidential Who's Who dba Presidential Who's Who, Inc.*, 26 F.C.C.R. 8989 (2011), ECF No. 18-3 at 1-9 [hereinafter 2011 Notice]. Like the Fax in this case, the faxes at issue in the Presidential Who's Who adjudications were single-page communications offering a "free listing" in the sender's directory but not directly promoting it for sale.[5] The FCC nevertheless determined that the faxes "serve[d] as a pretext to advertise a commercial product or service - the 'Presidential Who's Who' publication and associated products." 2010 Notice ¶ 7; *see also* 2011 Notice ¶ 8 ("While the faxes do not charge individuals for listings in the 'Presidential Who's Who' publication, they do either offer for sale the publication itself, or serve as prelude to such an offer."). The FCC explained:

> First, these faxes invite individuals to share information and give their permission to have it included in its publication. Although there is no cost for inclusion in the publication, the products associated with the publication, such as professional directories or plaques, are later commercially available. For example, a complainant indicated that the offer to be included in the publication was free of

---

[4] Congress expressly delegated authority to the FCC to enforce the TCPA. *See* 47 U.S.C. § 503(b)(1). Like its rule-making authority, *supra* note 3, at 6, the FCC's interpretation of the TCPA in the context of an adjudication is accorded some persuasive weight. *See U.S. v. Mead Corp.*, 533 U.S. 218, 219 (2001) (noting that congressional "[d]elegation of . . . authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking" and determining the degree of deference afforded to an agency adjudication by applying the same framework of analysis applied to notice-and-comment rulemaking).

[5] Plaintiff obtained two "representative fax[es] from Presidential Who's Who in case number EB-08-TC-2507." ECF No. 18-4 at 1-3. Those faxes notified the recipient that it had been selected for inclusion in Presidential Who's Who's directory and provided a returnable blank form for the recipient's contact information. *See id.* at 4-5. The faxes at issue in the Presidential Who's Who adjudications differ from the facsimile at issue here in certain ways—notably, the Presidential Who's Who faxes appear unsolicited because they contain blank spaces for the recipient's contact information, whereas the Fax here pre-populated those same fields with known contact information. But their substantial similarities—both are single-page faxes soliciting contact information and offering a "free" listing in a directory, followed by direct solicitation efforts—support applying the FCC's interpretation of the term "unsolicited advertisement" to this case.

> charge, but when she later called the company, "they try to sell you the publication at a ridicu[lous] price." Moreover, other complainants indicate that the faxes also offered the opportunity to purchase the publication. . . . In this instance, we find that the faxes serve as part of an overall campaign to sell the "Presidential Who's Who" publication and associated products, and as such they are advertisements within the meaning of the section 227.

2010 Notice ¶ 7. The above reasoning applies with equal force to the Fax at issue here. Like the Presidential Who's Who facsimiles, the Fax offered a free listing, which allegedly served as a prelude to later solicitations to purchase the Directory. It remains for discovery to determine whether the Fax was in fact "part of an overall campaign" to sell the Directory, as the FCC concluded in the Presidential Who's Who adjudications. But at this stage, Plaintiff has pled enough to allege a violation of the TCPA.

### B. The "Established Business Relationship" Exception

Grey House also argues that it is not subject to liability under the TCPA because its Fax falls within a statutory safe harbor to the general prohibition on "unsolicited advertisements"—the "established business relationship" exception. Def.'s Mem. in Supp. at 7. According to Defendant, that exception applies here because "Plaintiff is and has been listed in the Directory that Grey House Publishing publishes annually since at least 2006" and "[o]n prior occasions the listing information for Plaintiff has been updated." *Id.* at 2.[6]

The TCPA exempts from liability "unsolicited advertisements" sent to recipients with whom the sender has an "an established business relationship." 47 U.S.C. § 227(b)(1)(C)(i). An "established business relationship" is "a prior or existing relationship formed by a voluntary two-way communication . . . on the basis of an inquiry, application, purchase or transaction . . . regarding products or services . . . , which . . . has not been previously terminated by either party."

---

[6] These are factual assertions without any evidentiary support. Nevertheless, the court considers Defendant's argument, without converting its Motion into one for summary judgment.

9

*Rules & Regulations* at 3797-98. Merely demonstrating an "established business relationship" between the sender and recipient, however, is insufficient to come within the safe harbor. To qualify, a facsimile also must contain a "notice," 47 U.S.C. § 227(b)(1)(C)(iii), that includes certain statutorily required elements, *id.* at § 227(b)(2)(D). Those elements include a specific written disclosure "that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements . . . *and* that failure to comply, within the shortest reasonable time, as determined by the [FCC], . . . is unlawful." *Id.* at § 227(b)(2)(D)(ii) (emphasis added). The FCC has issued rules that define "shortest reasonable time" as 30 days and provide that "failure to comply [with a request to opt out], within 30 days . . . is unlawful." 47 C.F.R. § 64.1200(a)(4)(iii)(B); *see also City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.,* Civ. Action No. 11-2658, 2015 WL 1421539, at *11 (D.N.J. Mar. 27, 2015) ("[T]he advertisement . . . must state that the sender's failure to comply with a request for removal within 30 days violates applicable law[.]").

Grey House does not qualify for the "established business relationship" safe harbor because the Fax failed to include all of the statutorily mandated disclosures. The Fax stated only that the recipient is "entitled to opt out of future faxes" and provided instructions as to how the recipient could do so. ECF No. 12-1. It did not state, however, that Grey House must honor an opt-out within 30 days and that the failure to do so would be unlawful. Accordingly, even if Grey House could demonstrate that it had an "existing business relationship" with DRCN, its non-compliance with the TCPA's strict notice requirements disqualifies it from the safe harbor.

V. **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is denied. The court will issue a separate order regarding further proceedings in this case.